# CIRCUIT COURT OF HANOVER COUNTY

Commonwealth of Virginia

v.

Brian Sherad Mallory

December 20, 2012

Case Nos. CR90B00387, CR12000839

By Judge J. Overton Harris

Before the court is Defendant's Motion for a neurological examination and reexamination of Defendant's competency to stand trial and sanity at the time of the offense. Additionally, Defendant had made a motion for an analysis of evidence by the Department of Forensic Science, which motion is rendered moot because the Commonwealth explained that all evidence had been tested. The court heard argument on December 13, 2012, and took the matter under advisement. Following a thorough review of the pleadings and the law, the court finds as follows.

## I. *Background*

An order for a psychological evaluation of Defendant was entered by the General District Court on March 9, 2012. A clinical psychologist (hereinafter "Doctor") conducted a psychological examination and subsequently submitted a "Competency Report on [Defendant]" on April 12, 2012. The report concluded that it was the Doctor's opinion "[b]ased upon the results of the psychological examination . . . that [Defendant] is competent to stand trial." The report stated:

> The Bender-Gestalt test was utilized to screen for organic brain damage. A qualitative examination of the protocol reveals a number of mild distortions of the sort most usually associated with functional factors. To more completely rule out the

possibility of organicity, a neurological examination, together with an EEG, CAT scan, and/or MRI would be necessary.

Defendant examined the Doctor at the December 13, 2012, hearing on his report and conclusions therein. The Doctor testified his opinions were based on the information available at the time through his own testing and observations. The Doctor testified a neurological report and further test results indicating organic brain damage could require him to alter his opinion on both sanity and to a lesser extent competency. Based on the Doctor's testimony and report, Defendant moved the court for an order for the neurological examination and tests and a reexamination as to competency to stand trial and sanity at the time of the offense.

## II. *Issue*

Is an indigent criminal defendant entitled to a neurological examination and certain testing and reexamination of his competency to stand trial and sanity at the time of the offense where the initial examiner rendered an opinion adverse to the defendant but qualified that opinion stating that results from an additional neurological examination and specific testing could alter his opinion?

## III. *Rule of Law*

In *Ake v. Oklahoma*, the Supreme Court of the United States reversed the state court's rulings and held that, "when a defendant has made a preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial, the Constitution requires that a State provide access to a psychiatrist's assistance on this issue if the defendant cannot otherwise afford one." *Ake v. Oklahoma*, 470 U.S. 68, 74 (1985).

Virginia Code § 19.2-167 prohibits trying an incompetent defendant; specifically, "No person shall, while he is insane or feebleminded, be tried for a criminal offense." Virginia Code § 19.2-169.1 provides the statutory authority and procedure for the determination of a defendant's competency to stand trial; specifically:

> A. *Raising competency issue; appointment of evaluators.* — If, at any time after the attorney for the defendant has been retained or appointed and before the end of trial, the court finds, upon hearing evidence or representations of counsel for the defendant or the attorney for the Commonwealth, that there is probable cause to believe that the defendant . . . lacks substantial capacity to understand the proceedings against him or to assist his attorney in his own defense, the court shall order that a competency evaluation be performed by at least

one psychiatrist or clinical psychologist who is qualified by training and experience in forensic evaluation. . . .

Virginia Code § 19.2-169.5 provides the statutory authority and procedure for the evaluation of a defendant's sanity at the time of the offense; specifically:

A. *Raising issue of sanity at the time of offense; appointment of evaluators.* — If, at any time before trial, the court finds, upon hearing evidence or representations of counsel for the defendant, that there is probable cause to believe that the defendant's sanity will be a significant factor in his defense and that the defendant is financially unable to pay for expert assistance, the court shall appoint one or more qualified mental health experts to evaluate the defendant's sanity at the time of the offense and, where appropriate, to assist in the development of an insanity defense. Such mental health expert shall be (i) a psychiatrist, a clinical psychologist, or an individual with a doctorate degree in clinical psychology who has successfully completed forensic evaluation training as approved by the Commissioner of Behavioral Health and Developmental Services and (ii) qualified by specialized training and experience to perform forensic evaluations. The defendant shall not be entitled to a mental health expert of his own choosing or to funds to employ such expert. . . .

## IV. *Analysis*

The Commonwealth, in arguing this court should deny Defendant the neurological examination and testing, relied on an Arizona case where the state supreme court affirmed the trial court's ruling denying a defendant further tests to determine whether the defendant suffered from temporal lobe epilepsy. *Arizona v. Vickers*, 159 Ariz. 532, 768 P.2d 1177 (1989), *cert. denied*, 497 U.S. 1033 (1990). In that case, a psychiatrist testifying for the defense "stated that there was a "definite probability" that defendant had temporal lobe epilepsy [but] no one could positively conclude [that] unless defendant underwent further testing and observation." *Id.*, 159 Ariz. at 536, 768 P.2d at 1181. "The trial court appointed . . . a neurologist, to examine the defendant to determine if he needed further testing." *Id.* The neurologist "concluded that further diagnostic testing would be 'totally superfluous'." *Id.* However, "[t]wo other doctors . . . testified that defendant did not have temporal lobe epilepsy." *Id.*

The defendant in *Vickers* relied on the holding from *Ake. Id.* The court addressed the three factors from *Ake*; specifically, in its analysis of the third factor, the court stated, "[i]n this case, no indication exists that further

testing would have helped defendant prove his insanity defense." *Id.*, 159 Ariz. at 537, 768 P.2d at 1182.

The Commonwealth also argued a Court of Appeals of Virginia case affirming the trial court's denial of appointment of a neurologist should inform this court's rulings. In *Downing* the defendant argued the trial court erred in denying "his motion to appoint a neurologist to assist in his defense and erroneously struck the evidence of his pathological intoxication in support of his defense of not guilty by reason of insanity." *Downing v. Commonwealth,* 26 Va. App. 717, 719, 496 S.E.2d 164, 165 (1998). The court appointed psychologist recommended the defendant "undergo a neurological examination, including an E.E.G. and an M.R.I." *Id.*, 26 Va. App. at 720, 496 S.E.2d at 165. "[He] stated that the neurological examination would be helpful to him in determining the cause of [defendant's] pathological intoxication." *Id.* However, he also acknowledged "that the neurological examination was not a necessary component of his diagnosis and that his opinion that [defendant] was legally insane at the time of the killing would remain unchanged whether or not a biological component of the pathological intoxication became manifest." *Id.* The trial court ruled, and the Court of Appeals in *Downing* affirmed, that "evidence of pathological intoxication by voluntary intoxication [cannot] be admitted into this Court as a matter of law on the issue of insanity."

The Court of Appeals in *Downing* addressed the defendant's argument and reliance on *Ake* and the lower court's refusal to appoint a neurologist. The Court said "[t]he Supreme Court of Virginia has held that [*Ake*] requires, in some circumstances, that a court appoint a non-psychiatric expert to assist the defendant with his or her defense." *Id.*, 26 Va. App. at 723, 496 S.E.2d at 167 (citing *Husske v. Commonwealth,* 252 Va. 203, 211, 476 S.E.2d 920, 925 (1996) (affirming ruling that indigent defendant was not entitled to court ordered DNA expert)). The Court went on to explain that "[t]he defendant bears the burden of showing a "particularized need" for expert assistance based on the circumstances of the case, and the question of whether a defendant has made that showing rests within the discretion of the trial court." *Id.*

In this case, the Doctor testified his opinion on Defendant's competency and sanity at the time of the offense could change dependent upon the outcome of a neurological examination including an EEG, CAT scan, and/or MRI. This case is distinguished from *Vickers*, where "no indication exist[ed] that further testing would have helped defendant prove his insanity defense." Here, Defendant's insanity defense may depend upon the outcome of the additional examination and tests the Doctor has suggested.

This case is also distinguished from *Downing* in that Defendant has shown a particularized need for the additional testing given the Doctor's testimony the results could, in fact, require him to alter his opinion.

## V. *Conclusion*

The Doctor's original opinion, concerning the Defendant's competency and sanity at the time of the offense, was a qualified opinion based on then available information. The Doctor testified the additional tests would allow him to provide a more definitive opinion. Under *Ake* and Virginia case law, Defendant has a right to have a psychological examination and to non-psychiatric expert assistance in regard thereto. Notwithstanding the burden on the Commonwealth for both the expense of the examination and tests and the security measures needed to facilitate such testing, the court rules Defendant is entitled to a neurological examination and testing and a subsequent reexamination by the Doctor. Counsel shall schedule a hearing to determine how this will be accomplished.